## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PIPESLOT, INC., | : | CASE No 15-CV |
| Plaintiff | : | |
| | : | **VERIFIED COMPLAINT** |
| V | : | |
| | : | **JURY TRIAL DEMANDED** |
| MIDBURY INDUSTRIES, INC., | : | |
| Defendant | : | |

**NOW COMES** Pipeslot Inc., Plaintiff by their attorney, Robert A. Saurman, Esq., as and for their Complaint, upon the Plaintiff's personal knowledge and upon information and belief, as to all other matters asserted herein, alleging as follows:

### I.

### NATURE OF THE ACTION

Plaintiff Pipeslot Inc. ("Pipeslot") is the owner of a patent duly filed with the Untied States Patent and Trade Office ("USPTO") consisting of a certain pipe connector molds and is asserting claims against Defendant Midbury Industries, Inc., ("Midbury") for recovery of the molds together with the damages for acts of wrongdoing including among other things, claims of fraud, misrepresentation for the billing of manufactured products, breach of contract, conversion, tortuous interference in contracts, accounting, declaratory judgment and appointment of receiver.

### II.

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1332(a)(2), because complete diversity exists between Plaintiff and the Defendant; where the amount in controversy exceeds $75,000.00.

2.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b) insofar as the plaintiff's principle place of business is headquartered in this district at 291 Kunkletown Road, Kunkletown Pennsylvania and all or a substantial part of the events or omissions giving rise to the claims of misconduct contained herein, including the electronic delivery of false and misleading financial documents or other information relied in the terms of a contract among the parties occurred in this district.

### III.

### SUPPLEMENTAL JURISDICTION

3.     To the extent that any of the Plaintiff's claims lack an independent basis for original federal jurisdiction, this Court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367 because they are so related to the claims within this Court's original jurisdiction, that they form a part of the same case or the controversy under Article III of the United States Constitution.

### IV.

### PARTIES/STANDING

**Plaintiff:**

4.     Plaintiff, Pipeslot Inc., is an entity duly incorporated under the laws of the State of Florida with its principle place of business located at 291 Kunkletown Road, Kunkletown Pennsylvania.

**Defendant:**

5.     At all times relevant herein, defendant, Midbury Industries Inc., was and is a New York Corporation maintaining its principle place of business in the State of New York, having its executive offices located at 86 East Merrick Road, Freeport, New York.

## V.

## <u>FACTS</u>

6.      Since commencing in or about 1988 and continuing to date Pipeslot has been the owner of a patented injection molding process with the USPTO consisting of One Family Mold Containing Three Trumpets Three Screens Three End Caps One Holder One #4 Holder Three Cavity Mold, One Lifting Ring Holder One Cavity Mounted On The Same Mold Base As The #4 Holder One Screens Eight Cavities Mold One Caps & Screens Ten Caps & Three Screens One Trumpets Six Cavity Steel Mold (hereafter the "Molds").

7.      The Molds are used as cast to manufacture pipe inserts.

8.      The Molds are subject to patent protection and may not be used to produce Pipeslot inserts without the express consent of Pipeslot.

9.      Pipeslot engages in contracts for the delivery of its patented pipe connector parts throughout the United States and Canada.

10.      At all time material hereto, Midbury was/is engaged in the process of injection for molded plastics, contract manufacturer of custom thermoplastic injection molded OEM Components, insert molding and mold making and manufacturing of plastics parts molded to specification.

11.      Commencing in or about 1978 Pipeslot and Midbury entered into a business relationship in which Midbury using Pipeslot's patented injection Mold to manufacture plastic parts used as pipe inserts.

12.      At all times material hereto the pipe inserts are used during construction and for retrofitting pipeline service for both residential and commercial developers under agreements entered into between Pipeslot and thirds-party users of said products.

13.     At all times material hereto, in 1978, Pipeslot delivered its only set of Molds to Midbury in Freeport New York for use in the manufacturing of pipe connector parts.

14.     At all times material hereto, in 1978, Midbury accepted delivery of the Molds by the Pipeslot agreement. Midbury was to produce as many inserts as ordered and presented to Midbury with payment for said orders to be made with 30 days of receipt of invoice.

15.     At all times material hereto, in 1978, Midbury agreed and understood that property, specifically to include the molds, would be returned on demand and transferred back to Pipeslot.

16.     At all times material hereto, since July 2014 Pipeslot has presented orders for the manufacturing of Pipeslot pipe inserts including orders from Rinker Material, United Concrete Pipe, Sciuate Concrete Pipe Corp., Hanson Pipe and Precast, and others.

17.     That at all times material hereto Midbury has knowingly and intentionally failed to fulfill the orders placed by Pipeslot under its contractual agreements to others.

18.     Since September 2014, Pipeslot has made a demand for the return and transfer and delivery of its Molds for the purpose fulfilling its contractual obligations of the Pipeslot's patented pipe inserts.

19.     That at all times material hereto Midbury has unlawfully refused to return the Molds to Pipeslot falsely claiming that Midbury is entitled to a lien for money owed as payment on outstanding invoices for delivery of Pipeslot pipe-inserts to Pipeslot's customers.

20.     On or about August 2014 Midbury, through its owner operator Michael Natille and Diane Natille (AKA Diane Jones) via electronic transmissions and through the United States mails presented Pipeslot's CEO Donna Chillari with a false claim or past amounts owed.

21.     At all times hereto, in August 2014, Midbury fully knowing the statements were false or otherwise misleading told Pipeslot-CEO Chillari that the Molds were no longer in their possession and had been delivered to Penn Plastics Inc., a company engaged in the manufacturing of plastics.

22.     At all times material hereto, in August 2014 after investigating the claimed delivery of said Molds to Penn Plastics Inc. Pipeslot was informed that the Molds were not in their possession and had been returned to Midbury Industries.

23.     At all times material hereto the statement of delivery of the Molds to Midbury and demand for payment of invoices claiming money owed were and are false, known to be false then and now and are part of a scheme to extort money not otherwise owed to Midbury.

24.     At all times material hereto, Pipeslot has paid all invoices due, demanded and owed.

## Count I.

## **FRAUD**

25.     Plaintiff Pipeslot repeats and incorporates by reference the allegations in Paragraphs one (1) through twenty four (24) above as if fully set forth again here.

26.     During the period from at least September 1995 in and through the present, Plaintiff Pipeslot and Defendant Midbury communicated through telephone conversations, emails and other written, electronic and verbal communications.

27.     Defendant, made or caused to be made multiple false representations and material omissions to the Plaintiff relating to the return of their Molds on demand and on the outstanding invoices and the amounts due and owed.

28.    The falsity of such statements and omissions was either known to the defendant or they were made with reckless indifference as to their truth.

29.    The misrepresentation and omissions were made for the purpose of defrauding and extorting the plaintiff by refusing to return their property, specifically the Molds.

30.    By reason of the foregoing plaintiff suffered compensable injury resulting from the misrepresentation and omissions, in that they have been unable to operate their business by fulfilling their existing contractual obligations or by entering into agreements to deliver their patented products.

31.    During the period September 2014 and through the present, Defendant:

(a)    with scienter, employed, devices, schemes, or artifacts to defraud, made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(b)    engaged in acts, practices, or courses of business which operate or would operate as a fraud or deceit upon any person.

(c)    made or caused to be made multiple false representations and material omissions to the plaintiff relating to the certification of their franchise-licenses and its financial performance as alleged herein;

(d)    the falsity of such statements and omissions was either known to Defendant or they were made with reckless indifference as to their truth;

(e)     the misrepresentations and omissions were made for the purpose of defrauding and otherwise extorting the Plaintiff by continuing to conceal from them a true accounting of actual money owed;

(f)     plaintiff depended and trusted that when the demand for return of the Molds was made, that they would be returned and had the right to rely on them and that all invoices would be true and accurate as to the amounts owed; and

(g)     the Plaintiff suffered compensable injury resulting from the misrepresentations and omissions.

32.     The conduct of the Defendant as alleged herein was accomplished with actual malice, in that it was the product of conscious and deliberate wrongdoing, the knowing and intentional misrepresentation and concealment of material information, wrongful motive, intent to injure, and fraud.

33.     By reason of the foregoing Midbury is liable for the damages hereto claimed and to be proven at trial in an amount to be proven at trial but in an amount no less than seventy five thousand dollars ($75,000.00).

34.     By reason of the foregoing Midbury is liable for punitive damages in an amount to be awarded by a jury.

## COUNT II.

### NEGLIGENT MISREPRESENTATION

35.     Plaintiff Pipeslot repeats and incorporates by reference allegations in Paragraphs one (1) through thirty four (34) above as if fully set forth again here.

36.     Defendant owed a duty of care to the Plaintiff to provide them with full, accurate and truthful information regarding the material aspects of the delivery and return of the Molds and billing invoices.

37.     In breach of that duty the Defendant negligently asserted or caused to be asserted multiple false statements, and negligently omitted to disclose material facts, as set forth heretofore.

38.     The Defendant intended that their statements would be acted on by the Plaintiff. They had knowledge that the Plaintiff would probably rely on their statements in making the decision to deliver the Molds and place orders, and further knew that the statements, if erroneous, would cause Plaintiff to suffer loss or injury.

39.     Plaintiff made decisions and took action in reliance on the Defendant's false statements.

40.     As a direct and proximate result of the Defendant's negligent representation and omissions, Plaintiff suffered financial loss.

41.     By reason of the foregoing Midbury is liable for the damages heretofore claimed and to be proven at trial in an amount to be proven at trial but in an amount no less than seventy five thousand dollars ($75,000.00).

42.     By reason of the foregoing Midbury is liable for punitive damages in an amount to be awarded by a jury.

## COUNT III.

### TORTIOUS INTERFERENCE WITH A CONTRACT

43.     Plaintiff Pipslot repeats and incorporates by reference the allegations in Paragraphs one (1) through forty two (42) above as if fully set forth here again.

44. Defendant Midbury knew of the existence of contracts Plaintiff has with others for delivery of Pipeslot pipe-inserts.

45. Defendant Midbury has intentionally and, with malice towards Plaintiff Pipeslot, induced others to breach their contractual obligations to Plaintiff.

46. As a result of the breach, Plaintiff Pipeslot has incurred damages, which include, but are not limited to, pecuniary loss and the loss of opportunities to make substantial profits from their contract.

47. Defendant Midbury is therefore liable for the tort of tortuous interference with a contract in an amount to be proven at trial but in an amount no less than seventy five thousand dollars ($75,000.00).

48. By reason of the foregoing, Defendant Midbury is also liable for punitive damages.

## COUNT IV.

## **BREACH OF CONTRACT**

49. Plaintiff Pipeslot repeats and incorporates by reference the allegations in Paragraphs one (1) through forty eight (48) above as if fully set forth again here.

50. Plaintiff Pipeslot entered into binding agreements with Defendant Midbury.

51. The agreements were supported by valuable consideration.

52. Defendant Midbury intentionally breached these agreements or otherwise breached the agreement in a reckless, negligent or careless manner.

53. By reason of the foregoing breach of contacts, Plaintiff Pipeslot has sustained damages, which include, but are not limited to, pecuniary loss and the loss of opportunities to

make substantial profits from the contract in an amount to be proven at trial but in an amount no less than seventy five thousand dollars ($75,000.00).

54.    By reason of the foregoing, Defendant Midbury is also liable for punitive damages.

## COUNT V.

### CONVERSION

55.    Plaintiff Pipeslot repeats and incorporates by reference the allegations in Paragraphs one (1) through fifty four (54) above as if fully set forth again here.

56.    At all relevant times, Plaintiff Pipeslot was and continues to be the exclusive owner of the Molds.

57.    Defendant Midbury, by their wrongful acts, illegally took Plaintiff's property which was rightfully owned by Plaintiff and converted such property for their own use and benefit or has otherwise wrongfully withheld Plaintiff lawful right to their property.

58.    By reason of the foregoing theft/conversion of Plaintiff's property, Pl;aintiff Pipeslot has sustained damages, which include, but are not limited to, pecuniary loss and the loss of opportunities to make substantial profits from the contract in an amount to be proven at trial but in an amount no less than seventy five thousand dollars ($75,000.00).

59.    By reason of the foregoing, Defendant Midbury is also liable for punitive damages.

## COUNT VI.

### <u>DECLARATORY JUDGMENT APPOINTMENT OF RECIEVER</u>

60.     Plaintiff Pipeslot repeats and incorporates by reference the allegations in Paragraphs one (1) through fifty nine (59) above as if fully set forth here again.

61.     An actual and justifiable controversy presently exists between Plaintiff and Defendant regarding shares issued and Plaintiff ability to transfer the shares.

62.     Despite their promise to do so, and their lawful obligation, Defendant Midbury has refused to deliver or otherwise transfer to Molds back to Plaintiff.

63.     This Court should adjudge that under the terms of the parties' agreement Plaintiff is entitled to the immediate delivery of the Molds.

64.     That during the pendency of these proceeding the Court should appoint a receiver over the Molds for delivery to a manufacturer so as to allow Plaintiff to fulfill its contractual obligation and avoid a breach of its agreement with others for delivery of Pipeslot parts.

## COUNT VII.

### <u>ACCOUNTING</u>

65.     Plaintiff Pipeslot repeats and incorporates by reference the allegations in Paragraphs one (1) through sixty four (64) above as fully as if fully set forth.

66.     Defendant should be required to account for payments, debits and/or credits made by Plaintiff for any and all moneys paid or otherwise claimed due on invoice alleged as unpaid.

### <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** the Plaintiff respectfully request that this Court enter an order-and judgment on Counts "I" through "VII" above:

- Against all of the Defendant and in favor of the Plaintiff for the amount of damages established at trial on behalf of Plaintiff requiring Defendant to indemnify for all losses, sustained by the Plaintiff as a result of the Defendant's breaches of duties; and

- Granting appropriate equitable relief to remedy Defendant's breaches of fiduciary including upon an accounting with a declaration as and for the ownership and value of the Molds; and

- Awarding to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

- Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

By:   /s/Robert A. Saurman
ROBERT A. SAURMAN, ESQUIRE
Attorney I.D. No. 79415
513 Sarah Street
Stroudsburg, PA  18360
(570) 421-1406
Attorney for Plaintiff